**STATE of Minnesota, Respondent,**

v.

**Gary Wayne KOUBA, Appellant.**

No. A04–2489.

Court of Appeals of Minnesota.

Feb. 7, 2006.

Mike Hatch, Attorney General, Kimberly Parker, Assistant Attorney General, St. Paul, MN; and Earl E. Maus, Cass County Attorney, Cass County Courthouse, Walker, MN, for respondent.

John M. Stuart, State Public Defender, Davi E. Axelson, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by HALBROOKS, Presiding Judge, KLAPHAKE, Judge, and CRIPPEN, Judge.*

## OPINION

KLAPHAKE, Judge.

Appellant argues that his constitutional right to consult with an attorney was violated because he was not advised of his right to counsel in a probation revocation hearing held under Minn.Stat. § 609.14, subd. 2 (2002). After the district court improperly extended appellant's probation, his probation officer conducted a warrantless search of his residence under the terms of his probation and seized evidence that led to his conviction for a new offense. Because appellant was not validly on probation at the time of the search, any evidence seized at that time or during a later warrant search premised on evidence obtained in the initial search, was obtained illegally and must be suppressed. We therefore reverse.

## FACTS

On February 20, 2001, appellant Gary Wayne Kouba pleaded guilty to fifth-degree criminal sexual conduct involving a minor victim in violation of Minn.Stat. § 609.3451, subd. 1(1) (2000). He was sentenced to one year in jail, with all but 45 days stayed, and placed on probation for two years. Among the conditions of his probation, appellant was required to abide by state and federal laws, be truthful with his probation officer, submit to searches of his person and residence, refrain from contacting the victim, complete sex-offender treatment and all aftercare, and have no unsupervised contact with minors.

On February 10, 2003, appellant agreed to extend his probation for one year because he had not completed the required sex-offender treatment. He was represented by counsel at the probation hearing.

On February 9, 2004, one day before his extended probation was set to expire, the district court held a hearing for the purpose of again extending his probation. Apparently, appellant had still failed to complete his sex-offender treatment within the probationary period. At this hearing, appellant was not advised of the right to

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

counsel or represented by counsel. At the beginning of the hearing, the court stated:

> [T]he reason why we are here today is to allow Mr. Kouba the opportunity to rather than be in violation of his probation or get some sort of a warrant or stay, to extend his period of probation for one year from today's date, to the 9th of February, 2005, in order that he may have an additional opportunity to complete some treatment that he is working on.

Following this hearing, the district court extended appellant's probation for another year.

Approximately one week later, a Bureau of Criminal Apprehension special agent was administering a polygraph test to appellant as part of appellant's sex-offender treatment. Just before he was to take the test, appellant admitted that he possessed a videotape of a juvenile masturbating and photographs depicting naked juveniles.

Appellant's probation officer, Mary Hoglund, was informed of appellant's admission to a possible probation violation. Hoglund met with appellant and placed him on a 72–hour hold. Consistent with internal policy, Hoglund also sought a police escort before initiating a search of appellant's residence. Hoglund and Cass County Sheriff's Office Investigator Mike Diekmann accompanied appellant to his house, where appellant revealed numerous videotapes showing minors in sexual poses and other pornographic materials. Hoglund and appellant participated in the search, with Diekmann merely observing, although at one point he questioned the identity of one of the juveniles who appeared in one of the videotapes. One videotape showed appellant having oral sex with a minor victim. After appellant's arrest, police requested and obtained a search warrant for appellant's residence that resulted in the recovery of more pornographic materials.

Appellant was charged with third-degree criminal sexual conduct, use of a minor in a sexual performance, and possession of pornography involving minors under Minn. Stat. §§ 609.344, subd. 1(b), 617.246, subd. 2, 617.247, subd. 4(b) (2002). Appellant brought a pretrial motion to suppress all evidence obtained by the state "on the grounds that such evidence was seized in violation of the defendant's constitutional and statutory protections against unreasonable searches and seizures." After an omnibus hearing, the district court denied appellant's motion to suppress evidence.

The parties agreed to try the case on stipulated facts pursuant to *State v. Lothenbach*, 296 N.W.2d 854 (Minn.1980). Appellant was convicted of use of a minor in a sexual performance, and of fourth-degree criminal sexual conduct under Minn.Stat. § 609.345, subd. 1(b) (2002). The district court imposed a stayed 15–month sentence and placed appellant on probation for ten years.

On appeal from his conviction, appellant argues that his constitutional rights were violated because the initial search of his house was conducted without a search warrant, and the search was conducted after a probation revocation hearing at which appellant was not advised of his right to an attorney.

## ISSUE

When appellant was not advised of his right to an attorney during a probation revocation hearing that resulted in the extension of his probation, did the later seizure of evidence pursuant to the conditions of appellant's probation violate his constitutional rights so as to require suppression of that evidence?

## ANALYSIS

 Appellant claims that the district court erred by declining to suppress the

evidence seized in the warrantless entry of his residence. We review pretrial motions to suppress evidence by independently considering the facts to determine whether the district court erred in its decision. *State v. Harris,* 590 N.W.2d 90, 98 (Minn. 1999).

*Right to Counsel*

At the hearing to extend appellant's probation on February 9, 2004, appellant was not represented by counsel nor was he given the opportunity to have counsel represent him. Because of this, appellant argues that his probation was erroneously extended. We agree.

■ Traditionally, the Sixth Amendment right to counsel attaches at the "critical stages" of criminal proceedings. *United States v. Wade,* 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967). The Minnesota Constitution guarantees a right of legal representation to anyone charged with a crime. Minn. Const. art. 1, § 6. *See Gideon v. Wainwright,* 372 U.S. 335, 339–45, 83 S.Ct. 792, 793–97, 9 L.Ed.2d 799 (1963) (applying Sixth Amendment right to counsel to states via 14th Amendment); *Friedman v. Comm'r of Pub. Safety,* 473 N.W.2d 828, 831 (Minn. 1991) ("Minnesota has a long tradition of assuring the right to counsel."); *State v. Dumas,* 587 N.W.2d 299, 301 (Minn.App. 1998) ("the right to counsel and the other procedural protections afforded criminal defendants are generally triggered by the threat of incarceration[.]"), *review denied* (Minn. Feb. 24, 1999).

■ Specifically, "a defendant is entitled to representation at a probation revocation hearing." *State v. Ferris,* 540 N.W.2d 891, 893 (Minn.App.1995); *see State v. Balma,* 549 N.W.2d 102, 104–05 (Minn.App.1996) (reaffirming existence of right to counsel in probation revocation proceedings); *see also Mempa v. Rhay,*

389 U.S. 128, 135–37, 88 S.Ct. 254, 257–58, 19 L.Ed.2d 336 (1967) (counsel must be provided during hearings that combine sentencing and probation revocation). The right to counsel is also expressly provided for in probation revocation proceedings under Minnesota statutes and rules of criminal procedure. Minn.Stat. § 609.14, subd. 2 (2002) (at probation revocation hearing, "defendant is entitled to be heard and to be represented by counsel"); Minn. R.Crim. P. 27.04, subd. 2(1)(a) (at probation revocation hearing, probationer must be advised of entitlement "to counsel at all stages of the proceedings"). The failure to advise a probationer of the right to counsel mandates reversal of a probation revocation. *State v. Murray,* 529 N.W.2d 453, 455 (Minn.App.1995).

The state asserts that the February 9 hearing pertained to appellant's probation but did not constitute a probation revocation hearing, so appellant was not entitled to counsel. The district court considered and rejected appellant's claim in its omnibus order:

> The second [February 9, 2004] extension was a voluntary arrangement so the defendant would not be facing a probation violation. Because this did not constitute an adversarial proceeding, counsel was not required as would have had there been a probation violation that had been filed. Minn. R. Civ. P. 27.04.

> Although in a perfect world, counsel would have been present, the Court does not find that jurisdiction was lost in this case because counsel was not appointed for [appellant] prior to his voluntarily extending the period of probation.... Although it would constitute better practice to give an advisory, the failure to do so in this case does not divest the Court of jurisdiction[.]

We disagree with the district court's conclusion that the February 9, 2004 hearing was not a probation revocation hearing.

Minn.Stat. § 609.135, subd. 1c (2002) addresses a probationer's failure to complete court-ordered treatment, requiring that within 60 days of the expiration of the probationary period the prosecutor or probation officer request "a hearing to determine whether the conditions of probation should be changed or probation should be revoked." As such, and under the facts of this case, the hearing appellant received was a probation revocation hearing. The purpose of the hearing was to address appellant's failure to complete his sex-offender treatment, a condition of his probation.

While appellant was not afforded the niceties of receiving written notice of his probation violation and other procedural formalities required by Minnesota law, the consequences to him, extended probation for another year, were the same as if he had received proper notice of a violation, proceeded to hearing, and received punishment. Appellant therefore should have been offered the right to consult with an attorney before appearing at a hearing at which he agreed to restraint of his liberty in the form of another year of extended probation. *See State v. Hawanchak,* 669 N.W.2d 912, 915 (Minn.App.2003) (reversing disorderly conduct and fifth-degree assault conviction where defendant's right to counsel violated); *Murray,* 529 N.W.2d at 455 (reversing probation revocation where defendant not advised of right to counsel); *see also State v. Austin,* 295 N.W.2d 246, 251 (Minn.1980) (decision to revoke probation "cannot be a reflexive reaction to an accumulation of technical violations").

We acknowledge that appellant's present challenge to the February 9 probation extension could be viewed as an impermissible collateral attack. Such collateral attacks, however, are allowed in other instances where the defendant is unrepresented by counsel. For example, for purposes of enhanced penalty statutes in regard to sentencing, "[w]here a defendant is unrepresented and there is no record of waiver of counsel, a prior conviction may be collaterally attacked on constitutional grounds and invalidated in a subsequent proceeding." *State v. Nordstrom,* 331 N.W.2d 901, 904 (Minn.1983); *see State v. Lang,* 432 N.W.2d 478, 480 (Minn. App.1988). In such cases, the violation of a defendant's right to be represented by counsel is "a violation of a pivotal constitutional right" that will support a collateral attack. *State v. Warren,* 419 N.W.2d 795, 798 (Minn.1988). Similarly, the failure of appellant to be offered his right to counsel mandates that he be allowed to challenge the validity of his probation extension, which in turn was the basis for the seized evidence that supported the search warrant leading to his current conviction.

We therefore conclude that because appellant was not advised of his right to counsel at the February 9 hearing, his probation was invalidly extended.

*Basis for Warrantless Search*

Appellant next argues that because he was not validly on probation, the warrantless search of his residence had no basis. He reasons that without a valid basis to conduct a warrantless search, the evidence obtained during that search must be suppressed.[1] He further argues that

1. The state asserts that appellant impermissibly challenges the constitutionality of the search because the issue was not raised to or ruled on by the district court. When the

district court denied appellant's motion to suppress the evidence, however, it addressed the issue of whether the search of his residence fell within Fourth Amendment prohibi-

because the evidence seized during this search provided probable cause to support the search warrant, any evidence obtained under the search warrant must also be suppressed. We agree.

■■■ An individual has a reasonable expectation of privacy in his own home, and the warrantless search of a person's home is generally prohibited under the United States and Minnesota Constitutions. U.S. Const. amend. IV; Minn. Const. art I, § 10; *see State v. Othoudt,* 482 N.W.2d 218, 224 (Minn.1992) (Minnesota courts do "not look kindly upon warrantless entries of family residences."). Police are prohibited from entering and searching a home without a warrant unless the state has shown either "(1) consent or (2) probable cause and exigent circumstances." *State v. Taylor,* 590 N.W.2d 155, 157 (Minn.App.1999), *review denied* (Minn. May 18, 1999).

■■■ In Minnesota, a search involving a person on probation for a criminal offense is not "strictly governed by automatic reference to ordinary search and seizure law," and a probationer is entitled to less privacy protection than the average citizen. *State v. Earnest,* 293 N.W.2d 365, 368 (Minn.1980). While the Minnesota Supreme Court has declined to set forth a test less strict than that of the "reasonableness" standard applied in probable cause searches, it has recognized that the special status of a probationer may merit application of a different test that would be more invasive to a person's privacy, such

as the balancing test applied in administrative searches. *Id.* at 368–69.

Since the release of *Earnest* in 1980, Minnesota appellate courts have not further addressed the parameters of permissible searches of probationers. In two federal cases, *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) and *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), the Supreme Court considered the issue but did not adopt a specific test. *Griffin* applied an administrative-search test in upholding a warrantless search of a probationer's home without probable cause. *Griffin,* 483 U.S. at 880, 107 S.Ct. at 3172. In a fact scenario very similar to this case, a statutorily required balancing test was applied that "require[d] no more than reasonable suspicion to conduct a search of [a] probationer's house." *Knights,* 534 U.S. at 121, 122 S.Ct. at 592.

■■■ Under any of the tests that have been applied in federal cases or under Minnesota law, we conclude that a warrantless search under a valid probation agreement does not violate the constitutional prohibitions of the Fourth Amendment. A consensual search is accepted as a reasonable search under the Fourth Amendment. *Schneckloth v. Bustamonte,* 412 U.S. 218, 228, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973); *State v. Thompson,* 578 N.W.2d 734, 740 (Minn.1998). Thus, a search pursuant to a valid probation agreement generally will not violate the Fourth Amendment.

tions. The parties also discussed the facts pertinent to this issue at the omnibus hearing. Because the issue was impliedly raised at the omnibus hearing and was addressed by the district court, we may consider it on appeal. *See State v. Sorenson,* 441 N.W.2d 455, 457 (Minn.1989) (in general, defendant who does not raise an issue in district court waives

right to raise issue on appeal); *Tischendorf v. Tischendorf,* 321 N.W.2d 405, 410 (Minn. 1982) (appellate court can consider constitutional issues not raised to district court when required in interest of justice, when parties had adequate briefing time, and when issues implied at trial).

Nevertheless, when the sole basis for the search rests on the probation agreement and when that agreement has been extended only after the probationer's constitutional rights have been violated, the search itself becomes illegal. Generally, the "fruit of the poisonous tree" doctrine requires suppression of fruits of a constitutional violation. *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963); *State v. Thompson,* 273 Minn. 1, 20–21, 139 N.W.2d 490, 505–06 (1966). Typically, however, the constitutional violation arises because of police misconduct, and suppression is ordered to deter such misconduct. *See Wong Sun,* 371 U.S. at 486, 83 S.Ct. at 416.

The Minnesota Supreme Court recently addressed application of the exclusionary rule in situations where conduct by civil servants or judicial officers, and not police, gave rise to the illegal seizure of evidence. *Johnson v. State,* 673 N.W.2d 144 (Minn. 2004). In *Johnson,* the supreme court declined to exclude admission of DNA evidence in a defendant's rape trial where the DNA evidence was taken under an erroneous court order in a previous conviction. *Id.* at 149–50. In its analysis, however, the court relied in part on the fact that the purpose of the underlying statute violated by the admission of the evidence was not frustrated by allowing its admission. *Id.* at 150. Here, by contrast, the violation involved appellant's constitutional right to be represented by counsel, a serious constitutional violation that calls for a different result. We therefore conclude that the evidence obtained as a result of the illegal extension of appellant's probation must be suppressed. Furthermore, the warrant obtained by police after the initial search must also be suppressed because it was unsupported by probable cause without evidence of the prior, impermissible search. *See State v. Hanley,* 363 N.W.2d 735, 738

(Minn.1985) (search conducted without "a warrant issued upon probable cause is 'per se' unreasonable").

## DECISION

Because the extension of appellant's probation was ordered after a hearing at which appellant was not offered legal counsel, the evidence obtained solely as a result of this probation extension, and as a result of the warrant subsequently obtained based on this evidence, must be suppressed. Accordingly, appellant's conviction is reversed.

**Reversed.**